

RECEIVED
IN MONROE, LA.

APR 2 0 2012
ᴀᴄ
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR. A. NO. 11-00202-03 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TONY L. JOHNSON | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is an appeal [Doc. No. 40] by Defendant Tony L. Johnson ("Johnson") of a sentence imposed by Magistrate Judge Karen L. Hayes on February 7, 2012. For the following reasons, the sentence imposed by the Magistrate Judge is AFFIRMED, and Johnson's appeal is DISMISSED.

## FACTS AND PROCEDURAL HISTORY

In the fall of 2007, the Morehouse Parish School Board had begun busing a number of black students to the community of Beekman to attend Beekman Junior High School, a predominantly white, public school.[1] The busing program came in the wake of the well-known "Jena 6" controversy, which involved, in part, the hanging of nooses to intimidate black students at a public school in Jena, Louisiana, approximately 2 hours away from Beekman.[2]

On the night of November 6, 2007, Johnson, his Co-Defendants Brian Wallis and Lee

---

[1] The Morehouse Parish School Board remains under a desegregation order, which requires it to continue to take all steps practicable to eliminate the vestiges of the prior discriminatory system and to avoid promoting resegregation. *See United States v. Morehouse Par. Sch. Bd.*, 69-14429 (W.D. La.).

[2] The Court's statement of facts is drawn from the stipulated Factual Basis [Doc. No. 8-2] in support of Johnson's August 12, 2011 guilty plea.

Wallis, and two minors were talking outside the Beekman Volunteer Fire Station, which is located next door to the school. They began discussing the busing of the black students, complaining that the arrival of more black students would damage the school's reputation and lower its academic standards. Brian Wallis suggested that they hang a dead raccoon he had in his truck "to scare the little nigger kids." Johnson replied, " You reckon if we hang that coon up at the school that will scare them enough not to come back?" Another participant stated words to the effect, "that will show them," and everyone laughed.

Lee Wallis got a rope from his truck, which Johnson tied into a noose because of the historical significance of a noose being used to lynch black people. All Defendants were also aware of the use of a raccoon as a derogatory reference to black people.

Brian Wallis held the raccoon while Johnson placed the noose around its neck. Brian Wallis then tightened the rope and hung the racoon on the flagpole in front of the school, commenting "[t]hat will show the little niggers." Johnson commented that this "would be like Jena 6." All the participants then left.

According to the testimony of FBI Special Agent Palmer Allen,[3] the next morning, multiple teachers, parents, students, and the principal all saw the raccoon hanging in a noose from the flagpole, which was prominently displayed in front of the school.[4] As a result, the Morehouse Parish Sheriff's Department provided security at the school until surveillance cameras were

---

[3] Agent Allen was not the original investigating agent. However, he had worked with and discussed the investigation with the original investigating Agent Heather Koch (incorrectly spelled "Cook" in the transcript).

[4] The parties stipulated that "students arriving at Beekman Junior High School saw the dead raccoon in a noose . . . ." [Doc. No. 8-2, ¶ 4].

installed. The principal also held an assembly to address the incident and to explain the security steps the school had taken.

In the months following the hanging of the raccoon, Defendants met with a law enforcement officer who instructed them not to discuss the incident. They also concocted a false cover story that they hung the raccoon as a prank against the white principal, not because of any racial animus against the black students. Another law enforcement officer was also allegedly involved in the cover up of the incident.

On August 10, 2011, a Bill of Information was filed, charging Johnson and Co-Defendants Brian Wallis and Lee Wallis with one count each of criminal interference with federally protected activities in violation of 18 U.S.C. § 245(b)(2)(A).[5]

On August 12, 2011, Johnson pled guilty to the one-count Bill of Information.

On February 7, 2012,[6] the Magistrate Judge conducted a sentencing hearing. During the hearing, the Magistrate Judge heard testimony and argument on Johnson's objections that he had been incorrectly enhanced in the Pre-Sentence Investigation Report on the bases that he targeted the student victims because of their race and age. The Magistrate Judge concluded that Johnson's offense level was appropriately enhanced three levels under U.S.S.G. § 2H1.1 because he targeted the victims on the basis of their race. The Magistrate Judge further concluded that Johnson's offense level was enhanced two additional levels under U.S.S.G. § 3A1.1 based on the vulnerable

---

[5]Title 18, United States Code, Section 245(b)(2)(A) provides that "whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to interfere with – . . . any person because of his race, color, religion or national origin and because he is or has been – (A) enrolling in or attending any public school or public college . . . shall be fined under this title or imprisoned."

[6]The transcript incorrectly lists the date of the hearing as February 7, 2011.

age of the victims, who were between eleven and fourteen years old.[7] The Magistrate Judge adopted the findings of the Pre-Sentence Report that Johnson had an offense level of 14 and a criminal history category of I, which resulted in a recommended Guidelines range of imprisonment of fifteen to eighteen months. The Guidelines range was reduced to twelve months, the statutory maximum.

Before the Magistrate Judge sentenced Johnson, she considered the Government's Motion for Downward Departure pursuant to U.S.S.G. § 5K1.1, based on Johnson's substantial assistance in the investigation or prosecution of another person,[8] as well as the factors set forth in 18 U.S.C. § 3553(a) and appropriate policy concerns. The Magistrate Judge also permitted Johnson and his counsel to make a statement on mitigation of punishment. The Magistrate Judge then stated:

> [I]n this case, the Court does deviate from the guideline determinations pursuant to 5K1.1 due to the substantial assistance defendant provided to the government. I also do find that the defendant has . . . shown true remorse for what he's done and . . . I'm confident that he is not going to be a repeat performer of this type of act.
>
> However, I do want to stress that this is the 21st century. And living in the South, I think we have an even greater obligation to do everything we can to help stamp out the last vestiges of racism in this country.
>
> And the kind of actions that were taken by you against these young children simply because they were going to school in a place that you didn't want them to go to school is really inexcusable. And it's the kind of thing that the 21st century just cannot abide.

---

[7]Contrary to the Government's argument, the Magistrate Judge did not find that the Government had shown "beyond a reasonable doubt" that the enhancements were correctly applied. [Doc. No. 51, p. 5]. The Government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies. *See United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir.2011)

[8]U.S.S.G. § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

4

> And I don't want to let anybody – you or anybody in this courtroom think that I in any way minimize the seriousness of what happened in this matter. This is just something that should never happen again.
>
> These children . . . have . . . as much right to attend any school as anyone else. . . . that we still have people in this country who look at the race of a school child and judge them in any way on the basis of race is just a sad comment. I certainly hope that this kind of behavior is not going to occur again in this . . . area. But I am confident that it will not come from you if it happens again. I appreciate that.

[Doc. No. 44, Exh. B, Transcript of Sentencing Hearing on February 7, 2012]. After stating her reasons, the Magistrate Judge sentenced Johnson to a term of imprisonment of six months, to be followed by one year of supervised release which included the special condition that Johnson attend a course on cultural diversity and sensitivity. Given Johnson's status as the primary breadwinner of his family and the fact that he was ordered to serve a term of imprisonment, the Magistrate Judge did not impose a fine.

On February 21, 2012, Johnson timely filed a notice of appeal of the sentence imposed by the Magistrate Judge. On March 16, 2012, pursuant to the schedule set by the Court, Johnson filed his appellate brief. [Doc. No. 44].

On March 21, 2012, the Court granted Johnson's Unopposed Motion to Remain Free on His Own Recognizance Pending Appeal [Doc. No. 47].

On March 30, 2012, the Government filed its brief [Doc. No. 51] in response to Johnson's appeal.

## LAW AND ANALYSIS

### A.   Jurisdiction and Standard of Review

When sentenced by a United States magistrate judge, a defendant has "an appeal of right . .

from the judgment . . to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. The defendant is not entitled to a trial *de novo*, however; instead, "[t]he scope of appeal shall be the same as an appeal from a judgment of a district court to a court of appeals." Fed. R. Crim. P. 58(g)(2)(D).

This Court's review is governed by *Gall v. United States*, 552 U.S. 38 (2007), which provides:

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

*Id.* at 51; *see also United States v. Mondragon-Santiago*, 564 F.3d 357, 360 (5th Cir. 2009). The fact that the reviewing court could "reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal" of the sentencing court. *Gall*, 552 U.S. at 51.

B.  **Review of Sentence**

An offense under 18 U.S.C. § 245(b)(2)(A) is a misdemeanor, and the offender is subject to a maximum prison term of twelve months and/or a fine of not more than $100,000. *See* 18 U.S.C. § 3571(b)(5). As previously noted, the recommended Guidelines range of imprisonment in this case is the same as the statutory maximum of twelve months.

Johnson does not appeal the Magistrate Judge's ruling on his objections to the Pre-Sentence Report, nor does he contend that the Magistrate Judge committed procedural error. He

admits that he was given a reduction from the Guidelines range of imprisonment based on the Government's § 5K1.1 motion. However, citing § 3553(a) and *Pepper v. United States*, 131 S.Ct. 1229 (2011), Johnson argues that the Magistrate Judge's sentence is substantively unreasonable because she failed to give appropriate consideration and weight to his conduct in the ensuing four years between his crime and his sentencing and other appropriate concerns under § 3553(a).[9] Johnson points to the facts that (1) he has no criminal history; (2) he has significant employment history, he is employed full-time, and his employer cannot guarantee that his job will be available after his release; (3) he is the primary wage earner for his family, and his family will not be able to pay the monthly bills if he is imprisoned; and the monthly cost of his imprisonment will be $2,357.01. Finally, Johnson compares himself to his Co-Defendants, pointing out that Brian Wallis was sentenced to a five-month term of imprisonment, but he only agreed to plead guilty after Johnson cooperated, and he also tested positive for an illegal drug while awaiting sentencing. Lee Wallis also decided to plead guilty after Johnson cooperated and no § 5K1.1 motion was filed on his behalf, but he was sentenced to eight months imprisonment. Johnson concludes that "[t]he findings of the [Magistrate Judge], the Pre[-]Sentence Investigation Report and the [G]overnment's 5K1 Motion significantly suggest that the period of restraint and the kind of

---

[9]Under § 3553(a), a court must determine whether the Guidelines range or a greater or lesser sentence would reasonably address a defendant's criminal conduct and adequately reflect (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) pertinent sentencing commission policy statements; (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution to any victims of the offense.

7

discipline that ought to be imposed on [Johnson] should not include any term of imprisonment, especially in Leavenworth, Kansas at a cost of $2,357.01 per month." [Doc. No. 44, p. 9].

The Government responds that the six-month term of imprisonment imposed by the Magistrate Judge was fair and reasonable. The Government argues that the Magistrate Judge appropriately considered the circumstances of Johnson's offense, as well as his personal characteristics, and that Johnson has failed to refute the reasonableness of her determination.

The Court agrees with the Government. Johnson's challenge to the reasonableness of his sentence is unavailing. The Magistrate Judge clearly acknowledged Johnson's remorse and indicated her belief that the public did not need to be protected from further crimes of this type by Johnson, one of the considerations under § 3553(a). However, she determined that the unlikeliness of Johnson's recidivism was outweighed by the nature and circumstances of the offense, a crime aimed at intimidating children, and the need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct of this type, which are also valid considerations under § 3553(a). Finally, the fact that Brian Wallis, who also cooperated with the Government, received a lesser sentence by one month and Lee Wallis, who did not cooperate with the Government, received a greater sentence by two months does not render the Magistrate Judge's sentence substantively unreasonable. *See United States v. Campos–Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) ("[T]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) with respect to a particular defendant."). In essence, Johnson asks this Court "to engage in the substantive second-guessing of the sentencing court" that the Supreme Court instructed reviewing courts to avoid. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 767 (5th Cir. 2008). The Magistrate Judge's reasons

for imposing a six-month sentence in this case do not amount to an abuse of discretion.

## CONCLUSION

For the foregoing reasons, the February 7, 2012 Judgment of the Magistrate Judge is AFFIRMED, and Johnson's appeal [Doc. No. 40] is DISMISSED. Johnson must report to the facility designated by the Bureau of Prisons no later than June 4, 2012.

MONROE, LOUISIANA, this 20 day of April, 2012.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE